# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

DAVID THOMPSON,                     )
                                    )
         Movant,                    )
                                    )
v.                                  )          Case No. CV415-064
                                    )                  CR413-166
UNITED STATES OF AMERICA,           )
                                    )
         Respondent.                )

## REPORT AND RECOMMENDATION

After pleading guilty to possession of a firearm by a convicted felon (doc. 21),[1] David Thompson moves under 28 U.S.C. § 2255 to vacate his conviction and sentence.

## I.    BACKGROUND

During an April 2013 traffic stop, Thompson admitted to police that he had a gun in his pants. Presentence Investigation Report (PSI) ¶ 4. The gun was stolen and Thompson was a felon. *Id.* A search incident to his subsequent arrest uncovered marijuana, a scale, thirty-eight bullets, seven credit cards not in Thompson's name, and a roll of plastic wrap. *Id.* at ¶ 5.

---

[1]  All citations are to the criminal docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

Indicted by a federal grand jury on a single charge of felon-in-possession, Thompson chose to plead guilty. His plea agreement, which he signed over a month before his plea hearing (*compare* doc. 21 at 8 (agreement signed August 30, 2013), *with* doc. 15 (plea hearing held October 9, 2013)), contained limited appeal and collateral attack waivers. Doc. 21 at 5. In exchange for Thompson's decision to plead guilty and waive those review rights, he received a three point reduction in his Sentencing Guidelines offense level for acceptance of responsibility. PSI ¶ 22-23.

The PSI also recommended enhancements for possession of a stolen firearm and use of a firearm in connection with other felony offenses (felony marijuana possession and financial fraud). PSI ¶ 6. Thompson objected to the latter, arguing that (1) the "in connection" drug offenses were misdemeanors (simple possession of marijuana), not felonies, and (2) that he had owner permission to possess the credits cards found in his car and thus did not commit felony financial fraud. PSI Addendum at 1. The Court rejected those arguments and sentenced him to the statutory maximum of 120 months' imprisonment. Doc. 27 at 24. Thompson timely filed the present § 2255 motion on March 13, 2015.

## II.  ANALYSIS

Thompson advances three claims.[2]  First, he contends his plea agreement is "void *ab initio*" because it lacked bargained-for consideration, and was coerced "given that [he] did not receive the [plea agreement] until 15 minutes before" his plea hearing.  Doc. 24 at 8-9. Second, he argues that his attorney, John Carson, ineffectively performed by "failing to negotiate the plea agreement" and advising him to plead guilty when he would have received the same sentence after a trial conviction.  *Id.* at 10-11.  Finally, says Thompson, Carson rendered ineffective assistance at sentencing by failing to investigate the alleged financial fraud conduct that increased his Guidelines offense level.  *Id.* at 17.

### A.  Thompson's Plea Agreement -- Insufficient Consideration & Coercion

#### 1.  Consideration

Thompson believes that his plea agreement, a basic contract in his eyes, lacks three fundamental features -- offer and acceptance, mutual

---

[2]  His fourth claim -- that his attorney failed to file a direct appeal that Thompson specifically requested -- resulted in appointment of counsel (doc. 37) and the government's consent to a direct appeal.  That appeal ultimately failed (doc. 47) and the case returned to this Court for treatment of Thompson's remaining claims.

assent, and consideration. Doc. 24 at 4. At bottom, however, his arguments all circle back to an alleged lack of bargained for consideration. *See, e.g.*, doc. 24 at 9-10 ("Clearly, the plea, on its fact, does not disclose any return consideration. . . . .[T]he government [cannot] articulate any discussion or distinctive factual evidence of consideration of the plea agreement itself. The plea is simply fraudulent and cannot be found in law and therefore void.").

"A plea agreement 'is, in essence, a contract between the Government and a criminal defendant.'" *United States v. Jones*, 544 F. App'x 862, 863 (11th Cir. 2013) (quoting *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999)). That "analogy, however, should not be taken too far," *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990), because "[t]he formation of binding plea agreements is governed not by the Uniform Commercial Code, but by the Federal Rules of Criminal Procedure." *Boswell v. Crews*, 2013 WL 1562940 at * 21 (N.D. Fla. Feb. 25, 2013), *adopted in relevant part*, 2013 WL 1563541 (N.D. Fla. Apr. 11, 2013). Consequently, "the principles of contract law . . . have [been] adapted . . . for purposes of criminal law," *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005), though plea agreements

lacking any consideration may be invalidated. *See United States v. Brunetti*, 376 F.3d 93, 95 (2d Cir. 2004).

"The benefit that [Thompson] received in exchange for pleading guilty is clear." *Valentine v. United States*, 2014 WL 3905893 at * 9 (S.D.N.Y. Aug. 8, 2014). His plea agreement obligated the government to "not object to a recommendation" that he receive an acceptance-of-responsibility-based Guidelines offense level reduction. Doc. 21 at 1. The probation officer made that recommendation (PSI ¶¶ 22 & 23) and the Court accepted it by adopting the PSI's factual findings. Doc. 27 at 14). That reduction, as the Government correctly notes, placed Thompson in a more favorable sentencing posture by reducing his Guidelines range sentence from 110-120 months to 100-120 months. Although the Court ultimately sentenced him to the top of that range (120 months), Thompson benefited because a lower range made it more likely that the Court would afford him sentencing leniency. *See* 18 U.S.C. § 3553(a)(4) (courts must consider, but need not follow, the Guidelines range when imposing sentences). The plea agreement,

therefore, contained adequate consideration.[3] *See Brunetti*, 376 F.3d at 95 (plea agreement contained adequate consideration because it guaranteed "a *chance* at a reduced sentence"); *id.* ("[T]he *ex post* worthlessness of the consideration he received does not render nugatory the *ex ante* value of what Brunetti got.").

## 2. Coercion

Thompson also claims that his plea was "adhesive and coercive" because the agreement was presented to him just prior to his change-of-plea hearing. Doc. 24 at 8. Not so. First, he signed the agreement well over a month before the hearing. *Compare* doc. 21 at 8 (agreement signed August 30, 2013), *with* doc. 15 (plea hearing held October 9, 2013).

Second, Thompson's sworn, unrebutted, plea hearing testimony directly contradicts his coercion assertion here.

---

[3] Thompson's offer and acceptance and mutual assent arguments have no merit. The Government clearly offered the agreement, and his signature evinces acceptance. The plea agreement's recitals -- which, again, Thompson signed -- undermine the notion that he "never participated in any [plea] negotiations." Doc. 24 at 10. Carson and the Government conducted plea discussions "with the authorization of [Thompson]," and "on [his] behalf and with [his] permission." Doc. 21 at 1, 8. To boot, Thompson swore during his plea hearing that he consented to his attorney negotiating the agreement. Doc. 31 at 23. Simply concluding now that no mutual assent existed cannot overcome that sworn testimony or his signature's import. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014).

While § 2255 exists "to safeguard a person's freedom from detention in violation of constitutional guarantees," . . . "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." [*Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)]. As a result, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74, 97 S.Ct. 1621; *see id.* at 80 n. 19, 97 S.Ct. 1621 (explaining that if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing "only in the most extraordinary circumstances"). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74, 97 S.Ct. 1621.

*Taylor v. United States*, 2016 WL 742118 at * 6 (S.D. Ga. Feb. 24, 2016) (quoting *Winthrop,* 767 F.3d at 1216), *adopted*, 2016 WL 1047050 (S.D. Ga. Mar. 10, 2016).

Three times the Court asked Thompson if he'd had enough time prior to the plea hearing to speak with his lawyer and three times he confirmed he had. *See* doc. 31 at 13, 18, 23. When asked whether "anyone tr[ied] to force or coerce [him] or threaten [him] in any way," he replied "no." *Id.* at 23. He had no complaints about his lawyer's representation and stated that nothing "wrong or unfair" was "forcing

[him] to plead guilty." *Id.* at 22. Capping off the hearing, Thompson swore that he pled guilty "as a matter of his own free choice." *Id.* at 30.

Now, he conclusorily alleges that his plea agreement was coercive (and adhesive). Doc. 24 at 8. That's insufficient to hurdle the "formidable barrier" of directly contradictory plea hearing testimony, and his coercion claim accordingly fails. *Winthrop-Redin*, 767 F.3d at 1216.

## B. Ineffective Assistance -- The Plea Agreement

Thompson next asserts that Carson provided ineffective assistance[4] by failing to negotiate his plea agreement, doc. 24 at 10-11 ("Counsel simply failed any real notion of proper contract advocacy in the plea formation."), and wrongly advising him to plead guilty. *Id.* at 11. Rather than point to any facts, he contends that (1) the agreement's lack of

---

[4] To prevail on his IAC claims, Thompson:

> must show 'that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant.' *Hollis v. Sec'y, Fla. Dep't of Corr.*, 2015 WL 5847258 at * 1 (11th Cir. Oct. 8, 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). '[P]erformance is deficient when it falls below an objective standard of reasonableness' and is 'outside the wide range of professionally competent assistance.' *Id.* And prejudice occurs if 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id.*

*Murray v. United States*, 2015 WL 7069345 at * 2 (S.D. Ga. Nov. 12, 2015), *adopted*, 2016 WL 224132 (S.D. Ga. Jan. 19, 2016).

contractual elements (namely, consideration) evidences Carson's negotiating failures, *id.* at 10, and (2) pleading guilty resulted in the same sentence he would have received after a trial conviction. *Id.* at 11.

As discussed above, the plea agreement contains consideration and other required contractual elements. That alone neutralizes Thompson's IAC claim. Even if the Court construes it as complaining more broadly about the agreement's benefits, it still fails. Thompson, as the Government correctly notes, had no viable defense to the charges he faced (he admitted to police during the course of a valid traffic stop that he illegally possessed a gun). The prosecutor had no incentive to offer any benefits and Thompson thus cannot show any reasonable probability that a better deal would have materialized if only Carson had negotiated better. *See Cummings v. United States*, 2013 WL 2422889 at * 8 (S.D. Ga. June 3, 2013) ("A petitioner . . . fails to establish that he was prejudiced by counsel's failure to negotiate a more favorable plea agreement with nothing more than the bald assertion that such an agreement might have been possible."); *see also Murray*, 2015 WL 7069345 at * 7 (no prejudice where movant made no showing that foregone trial testimony would have had any effect on trial's outcome).

Nor did Carson deficiently perform by advising that Thompson plead guilty. Going to trial almost certainly would have resulted in Thompson receiving the statutory maximum sentence. As noted above, he had no defense and no real chance of prevailing at trial. With no acceptance of responsibility recommendation to reduce his Guidelines range sentence, he would have faced a recommended sentence well-above the statutory maximum.[5] Absent a significant downward departure (the PSI offers no factual basis for one), Thompson would have received the maximum sentence after a trial.

By contrast, pleading guilty fetched the responsibility reduction recommendation, which lowered his Guidelines range to 110-120 months. *See* PSI ¶ 55. Seen from the time of his guilty plea and in light of the overwhelming evidence of Thompson's guilt, that lower range made pleading guilty a reasonable recommendation. Carson did not provide ineffective assistance by making that recommendation.

---

[5] Without the acceptance of responsibility recommendation, Thompson faced a 135-168 months Guidelines range. *See* PSI ¶ 20 (unreduced offense level of 30) & ¶ 35 (criminal history category IV).

## C.    Ineffective Assistance -- Sentencing

Carson, Thompson says, performed deficiently by failing to investigate defenses to his four level Guidelines enhancement for possession of a firearm in connection with a financial fraud felony. Doc. 24 at 17. Specifically, he contends that he told Carson to locate the owners of the credit cards found in his possession, all of whom would verify that Thompson had permission to have their cards. *Id.* Carson allegedly refused. *Id.*

The plea agreement's collateral attack waiver bars this claim. (Thompson's earlier-discussed claims attacked the validity of the plea itself and thus escaped the waiver's reach.). And "[w]aivers like [Thompson's] 'will be enforced if the government demonstrates either: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver.' *United States v. Benitez–Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997)." *Taylor*, 2016 WL 742118 at * 3.

By signing his plea agreement, doc. 21 at 8, Thompson confirmed that he read and understood the entire document, including the

collateral attack waiver. And, after the government read the above waiver into record at his plea hearing, Thompson confirmed that he understood. Doc. 26 at 24-25. Because the district court specifically questioned him about the waiver and the plea hearing transcript makes clear that Thompson understood the impact of that waiver, it is enforceable and he cannot now complain about counsel's sentencing conduct. *Benitez–Zapata*, 131 F.3d at 1446.

Even if the waiver were invalid or nonexistent, Thompson's IAC sentencing claim still fails. He received a four level enhancement for possession-in-connection based on not only the financial fraud felony (possessing the seven credit cards), but also for felony marijuana possession (his prior marijuana convictions made his simple possession a federal felony). *See* PSI ¶¶ 16; PSI Addendum at 2. Regardless of whether he had the card owners' permission to possess the seven credit cards (and thus whether he committed felony financial fraud), then, Thompson still possessed a firearm during the commission of another felony. His enhancement, waiver or no waiver, remains valid. So even if Carson performed deficiently as movant claims, he suffered no prejudice from it. *See Murray*, 2015 WL 7069345 at * 2.

## III. CONCLUSION

David Thompson's § 2255 motion should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1–2 (S.D. Ga. Feb.9, 2009), the Court discerns no COA–worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added).

**SO REPORTED AND RECOMMENDED**, this  23rd  day of March, 2016.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA